## Commonwealth v. Johnson

*Richard F. Maize,* for Commonwealth.
*John I. Munson,* for defendant.

MORROW, J., July 20, 1951.—The Department of Welfare petitioned the Juvenile Court of Fayette County under the Act of May 25, 1937, P. L. 808, as amended by the Act of June 20, 1947, P. L. 672, 61 PS §§541-1, et seq., for the discharge of Leo Johnson from the Pennsylvania Institution for Defective Delinquents.

The court took testimony on this petition on April 24, 1951, and heard all persons desiring to be heard. At the conclusion of the testimony counsel were given opportunity to file briefs, but none has been received. From the petition and testimony taken the following facts may be summarized:

On petition of the District Attorney of Fayette County, filed April 9, 1943, at March sessions, 1943, no. 12, Juvenile Docket, Leo Johnson, colored, born

April 13, 1925, then a minor 17 years of age, was brought before this juvenile court. (He was then almost 18 years old, at which age he would have been beyond the jurisdiction of the juvenile court.) The petition charged Johnson with immoral acts, among which were attacks on three white girls and one Negro girl. A hearing in juvenile court was held April 9, 1943, at which it was made to appear without contradiction that Johnson had made assaults upon four different girls out in the vicinity of Penn-Craft, Fayette County. Three of the girls were white and one colored. These assaults were for the purpose of his having forcible sexual intercourse. According to Johnson's own statement he accomplished his purpose in one of the four attempts, the girl in this instance being a white girl 13 years old.

The same day the Juvenile Court adjudged Leo Johnson delinquent and committed him to Pennsylvania Industrial School at Huntingdon, Pa. This institution is now known as Pennsylvania Institution for Defective Delinquents. In one of the reports attached to the petition now before us Johnson is classified as a "low grade moron". He is reported as "defective in intelligence (Revised Binet form L, I. Q. 58)". A "Progress Report" attached to the petition states that on February 3, 1944, he was "Reported for Sodomy". An amplification of this report was developed at the hearing as follows: "In February 1944, however, he was reported for permitting seven boys to commit sodomy upon him. That infraction resulted in 15 months of housing on a special tier for the youth, before he was again tried in shop placement."

Under date of March 12, 1946, the superintendent at Huntingdon reported to the court with respect to Johnson in part as follows:

"Leo Johnson was received at Huntingdon as a delinquent on May 10, 1943. He had been adjudged

guilty of attempting rape of a white girl. There is no record of previous arrests, though the boy admits three other attacks on young girls. He attains his majority April 13, 1946. The boy scored an I. Q. of 58 on the Revised Stanford-Binet (form L), classifying him as mentally defective (imbecile) . . . Because of his mental and social inadequacy, and the seriousness of his charge, he was never favorably considered as a parole possibility. With his discharge at majority imminent, psychiatric opinion was requested, and on February 27, 1946, the boy was examined by Dr. Roy W. Goshorn, psychiatrist and superintendent of the Hollidaysburg State Hospital. Dr. Goshorn's recommendation is quoted in full as follows:

"I have carefully examined Leo Johnson, age 20, of Pittsburgh, with an I. Q. of 58. With his personality, and as a result of my examination and careful consideration of his history (four attempts at rape; would lie in wait in bushes for his prey; his behavior up to two years ago in this institution), I believe that this boy should be committed as a defective delinquent."

The same date, March 12, 1946, the superintendent petitioned the court under the Act of May 25, 1937, P. L. 808, to order an inquiry into the prisoner's condition by two qualified physicians. The two physicians whose names he suggested were appointed and they reported in part:

"From our examination of Leo Johnson and his record this date, we have found him to be an imbecile of marked social inadequacy and irresponsibility. He is a repeated sex offender, caught in sexual perversion within this institution as well, and would constitute a hazard to society if released at this time."

On receipt of this report we signed on March 21, 1946, the usual order of commitment under the Act of 1937, supra, committing Johnson to the Pennsyl-

vania Institution for Defective Delinquents at Huntingdon, Pa., where he then was and had been *since* early in 1943. This was just 23 days before he became 21 years old. He has been in said institution ever since and is now 26 years of age. He has spent the last five years and over in fact as an adult prisoner at this institution.

In 1948 a movement was begun to release Johnson on parole. An investigation through the Parole Office of Fayette County revealed that Johnson's mother had moved to Pittsburgh. The Pittsburgh office *of* probation and parole declined to assume supervision in this case. Thereupon the Superintendent at Huntingdon wrote Johnson's mother in part as follows:

"Dear Mrs. Johnson: I am writing again concerning your son Leo, our no. B-2108. We have had reports from the Allegheny County Quarter Sessions Probation Department in which they state that they do not have facilities to supervise Leo on probation. Due to the type of offense which Leo committed our board of trustees is unwilling to release him without probationary supervision."

Attached to the petition now under consideration is the recommendation by Superintendent Pennington, ending as follows:

"Because of the type of offense Leo committed and in accordance with recent psychiatric opinion in the case, I strongly recommend that an official probation type of supervision be arranged for him."

Since Johnson's mother is living in Allegheny County where he would in all probability live if paroled, the parole officers of Fayette County could not give him the supervision suggested and required. There is no suggestion in the petition of the Department of Welfare nor was any made at the hearing that the Pennsylvania Board of Parole will assume the responsibility of supervising Johnson on parole. Section 13

of the Act of May 27, 1943, P. L. 767, 774, 61 PS §331.31, amending the Act of August 6, 1941, P. L. 861, establishing said board, provides in part:

"This act shall apply to inmates confined in the Pennsylvania Industrial School (White Hill), situate at Camp Hill, Pennsylvania, the Industrial Home for Women at Muncy, Pennsylvania, and the Pennsylvania Industrial School at Huntingdon, Pennsylvania, when the maximum sentence which could have been imposed for the crime of which the prisoner was convicted equals or exceeds two years, including juveniles under 18 years of age serving sentence in the above named institutions, but exclusive of juveniles committed to said institutions."

It is clear that the maximum sentence which could have been imposed on Leo Johnson exceeded two years, but it may be replied that the last clause of the section just quoted exonerates the Pennsylvania Board of Parole from responsibility. However, looking beyond the form to the substance of the second commitment hereinbefore explained at length, which was for the purpose of continuing to hold Johnson after he was 21 years old and no longer a juvenile, we cannot find in truth and in fact that Johnson, past 26 years of age, now comes under the last clause of the section of the Act of May 27, 1943, above quoted, reading "but exclusive of juveniles committed to said institutions." Neither does any attempted distinction in meaning between these words in the act "serving sentence" and "committed," nor does the change of name of the institution alter our opinion that Johnson, if and when paroled, should be under the close supervision of the Pennsylvania Board of Parole. Section 1 of the Act of August 6, 1941, supra, states in part:

". . . it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom,

be subjected to a period of parole . . . under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth."

### Order

And now, July 20, 1951, after full hearing and consideration, and for the reasons indicated in the foregoing opinion, the petition of the Department of Welfare of Pennsylvania asking this court to make an order for the discharge of Leo Johnson from the Pennsylvania Institution for Defective Delinquents is refused and the petition is dismissed.